**William Harold YEAGER, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–85–762.

Court of Criminal Appeals of Oklahoma.

Aug. 31, 1987.

J.R. McNeeley, P.C., Oklahoma City, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, William Harold Yeager, was convicted in the District Court of Logan County of First Degree Murder, and received a sentence of life imprisonment. From this judgment and sentence, he appeals.

On the evening of May 14, 1984, the appellant, William Harold Yeager, shot the victim at his next door neighbor's house over a disputed amount of money that the victim owed him. After the shooting, witnesses to the incident called for assistance as the appellant returned to his home. Shortly thereafter, Officer Kelly of the Guthrie Police Department arrived and observed the wounded victim lying face down on his hands and knees in the yard, obviously in distress. Kelly attempted to stop the excessive bleeding of the victim until medical assistance arrived. Kelly then questioned the witnesses who directed his attention to the appellant's house. He went onto the front porch of the appellant's home and told him he wished to speak with him. Subsequently, the appellant stated, "Hell, he owed me some money." At that time, Kelly told the appellant he was under arrest and that he shouldn't make any further statements to him. The appellant had a belt in his hand and requested that Kelly allow him to throw it on his bed. As the appellant stepped into the house, Kelly held onto the appellant's arm and accompanied him inside, whereupon he observed a gun barrel partially concealed under the appellant's pillow. Kelly took custody of the .22 caliber revolver, and transported the appellant to the police department. Subsequently, Kelly went to the hospital where he was told that the victim had died from a gunshot wound to the chest.

In his first assignment of error, the appellant contends that the trial court erred in failing to sustain his motion to suppress evidence which was the result in an illegal search of his residence and a seizure of a .22 revolver. He further claims that Officer Kelly's warrantless search was unconstitutional and without probable cause. We disagree. Kelly received information from the witnesses to the murder which gave him probable cause to believe the appellant had committed the felony. After the appellant was in lawful custody, he requested that the officer allow him to place his belt upon his bed. Subsequently, Kelly observed and seized the weapon. It is well established that a police officer must act to protect himself and is justified in searching the arrestee and the area within his immediate control for weapons or evidence which could be destroyed. *Lee v. State*, 560 P.2d 226 (Okl.Cr.1977). There was a valid arrest and the search incident to the lawful arrest was justified. Moreover, Kelly's observance of the gun barrel protruding from underneath the appellant's pillow clearly falls within the "plain view" exception to the search warrant requirement for admissibility of evidence. This rule is applicable because; 1) Kelly's initial intrusion which afforded the plain view of the weapon was lawful; 2)

the discovery of the weapon was inadvertent; and 3) the incriminating nature of the weapon was immediately apparent. *Tucker v. State*, 620 P.2d 1314 (Okl.Cr.1980). Kelly observed the weapon in plain view from a position in which he had a lawful right, and its seizure was justified for his protection. This assignment is without merit.

 Next the appellant contends that the trial court erred by admitting into evidence statements that he made to police officers prior to and subsequent to his arrest. He also argues that he was intoxicated at that time and was sixty-nine years old, which rendered him incapable of making a knowing waiver of his constitutional rights. Testimony revealed that Kelly first encountered the appellant on his front porch, asked him to identify himself to which the appellant spontaneously commented "Hell, he owed me some money." At that time, Kelly advised the appellant that he make no further statements and then placed him under arrest. In *West v. State*, 581 P.2d 1318 (Okl.Cr.1978), this Court held that statements such as these are not a product of a custodial interrogation, but rather are voluntary statements spontaneously made to the officer who arrived first on the scene. Thus, the trial court did not err in refusing to suppress the spontaneous statement made by the appellant prior to the interrogation. Testimony further revealed that several hours after the arrest, Detective Rube interviewed the appellant at which time he gave him *Miranda* warnings. Rube stated that the appellant was given a written waiver of rights form which he read and signed. The appellant then made a written and taped statement after he voluntarily and knowingly signed the waiver of rights form. Rube noted that the appellant could read and write, was conscious of what was going on around him, was responsive, and did not seem to be intoxicated at that time. Having found that the introduction of the confession was supported by sufficient evidence that the appellant knowingly and intelligently waived his rights and understood the consequences of his waiver, we will not disturb the ruling of the trial court. This assignment is without merit.

 Finally, the appellant contends that the trial court erred by failing to instruct the jury on the lesser included offense of second degree murder. We find this contention to be without merit. The appellant has failed to properly preserve this issue for review by his failure to supply the trial court with a written instruction which he would consider adequate. *Stratton v. State*, 643 P.2d 645 (Okl.Cr.1982). Since no alternative instructions were given to the trial court, we find that the instructions given by the trial court adequately informed the jury as to the applicable law. *Allison v. State*, 675 P.2d 142 (Okl.Cr. 1983). Judgment and Sentence is AFFIRMED.

BRETT, P.J., and PARKS, J., concur.